In re ROSENBLATT et al.

(District Court, E. D. Pennsylvania. February 21, 1906.)

No. 2,420.

BANKRUPTCY—RIGHT OF RECEIVER TO BOOKS OF ALLEGED BANKRUPT—CLAIM OF PRIVILEGE.

An alleged bankrupt will be required to turn over books of account. relating to his business to a receiver appointed by the court of bankruptcy, where it is shown that they are necessary to enable the receiver to continue the business as directed by the court, notwithstanding a claim of privilege by the bankrupt on the ground that the books contain evidence which will tend to incriminate him, unless it appears that such claim is made in good faith and has a reasonable foundation; it not being his right to determine such question for himself.

In Bankruptcy. On petition of receiver to require alleged bankrupts to deliver to him their books of account.

Hepburn, Carr & Krauss, for receiver.

Furth & Singer, for alleged bankrupts.

HOLLAND, District Judge. The requisite number of creditors of the above-mentioned bankrupts filed an involuntary petition in bankruptcy against them on the 28th day of December, 1905, and the following day H. K. Mulford was appointed receiver and entered bond in the sum of $100,000. The nature of the business was such that upon petition the court was moved to make an order authorizing the receiver to continue the business for a limited time, and upon taking possession of the property, which is a manufacturing establishment, he found that the bankrupts had removed a number of the

books of account which had been kept by them in the conduct of their business. He thereupon presented a petition alleging that it was necessary to have the missing books in his possession in order to conduct the business in accordance with the order of the court, and for the purpose of preserving the estate, and asked that an order be made directing the bankrupts to deliver them to him, to which they filed an answer in which they claimed that the receiver had already sufficient books for the purposes of his appointment, and that they should not be required to deliver the books, held by them, to the receiver, because they contained evidence which might incriminate them.

The petition and answer were referred to a special referee to ascertain whether or not the receiver has in his possession sufficient books to enable him to perform his duties as receiver under the law, and if not, what additional books are necessary. On February 7, 1906, the referee filed a report in which he states that he took the testimony of H. K. Mulford, the receiver; of John E. Klienhurst, who had been the bookkeeper for Rosenblatt & Co., and now acting in that capacity for the receiver of Henry J. Walters, and of Robert E. Stockwell, a certified public accountant, from which he finds the following: That the books in the possession of the receiver consist of sales books, invoice books, and other books of original entries; that the books kept and taken by the firm are the sales ledger, private ledger, invoice ledger and cashbook; that there are from 2,000 to 3,000 accounts, aggregating $80,000 outstanding and due the firm, and that the receiver cannot make up any of these accounts, or carry on the business as directed by the court, or collect, or render accounts to the creditors, without having possession of the books now held by the alleged bankrupts. He further finds that these books had been placed in the possession of Henry J. Walters for several days, during which time he had statements copied from them of accounts which had been assigned to him. The petition alleges that between the 16th and 23d days of December, 1905, the bankrupts transferred and assigned to Henry J. Walters a large amount of book accounts, contained in the books kept by the firm, as security for certain alleged moneys loaned, and the receiver testified before the referee that without the possession of these books he was unable to know which accounts were assigned, and when money was received, whether it was upon such assigned accounts, or upon those still remaining in the bankrupts' estate. It was shown by the bankrupts' bookkeeper that these books were correctly kept and that all entries were correctly made from the books of original entries into the sales ledger.

It does not appear from anything in the record, either in the answer of the alleged bankrupts or in any of the evidence taken before the referee, that there is anything in these books which will tend to incriminate them. It is contended that the bankrupts are the sole judges of that question, and they are not required to do more than to claim their constitutional privilege that they are the sole judges of the question as to whether or not the books do contain such evidence, and that they are not required in any manner, by the production of evidence, to satisfy the court that their claim has some founda-

tion in fact. If this be the law, then, bankrupts in every case can retain their books, and creditors will be unable to secure evidence of what in most mercantile concerns is the most valuable asset, to wit, the book accounts. It would be the greatest possible encouragement to dishonest debtors to practice frauds upon their creditors and then destroy the evidence of it. But this question has been settled by the courts. They have taken a more reasonable view, which requires that it shall appear to the court that the claim is made in good faith and that there is reasonable ground to apprehend danger from the production of the books, and when this fact does appear then great latitude should be allowed the claimant in judging for himself as to the effect of any particular question or production of a book. "But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice." Brown v. Walker, 161 U. S. 599, 16 Sup. Ct. 648, 40 L. Ed. 819. And it would be equally potential in converting a salutary protection into a means of abuse if a bankrupt were permitted to judge entirely for himself, regardless of the facts, whether or not the production of a book will tend to incriminate him. The referee finds that it is necessary, in order that the receiver may perform the duties for which he was appointed, to have (1) the sales ledger of the firm; (2) the private ledger of the firm; and (3) the cashbook covering the period from March 1, 1904, to June 1, 1905.

It is therefore ordered that Henry M. Rosenblatt, William B. Landauer, and Emanuel H. Massman deliver (1) the sales ledger of the firm; (2) the private ledger of the firm, and (3) the cashbook covering the period from March 1, 1904, to June 1, 1905, to H. K. Mulford, receiver.